THE GEORGIA RAIL ROAD AND BANKING COMPANY, plaintiff in error, *vs.* HENRY M. SCOTT, defendant in error.

If a legal charge pertinent to the issue be asked in writing, it should be given to the jury. But if from all the evidence in the cause it appears that the verdict is right, and the jury should have found the same if the charge requested had been given, a new trial will not be granted on account of such refusal.

Trover. Motion for new trial. Decided by AUGUSTUS REESE. Richmond Superior Court. January Adjourned Term, 1867.

This was an action of trover, by Scott against said company, for the conversion of certain property described as "sixty bales of cotton yarns, twenty-one bales of hickory stripes, and five bales of woolen yarns" of the property of said petitioner, and of the value of twenty thousand dollars. The parties were at issue, on the appeal, upon a plea of not guilty.

The evidence was as follows:

L. O. BRIDEWELL (by commission) testified, through his agents, he shipped very large quantities of such goods as hickory stripes, woolen jeans and cotton yarns over said railroad, the value of each being many thousands of dollars; can't state quantity or value. The goods were marked to L. O. Bridewell and consigned to him. The agents of the different railroads took possession of them on their arrival in Augusta, Georgia.

Certain quantities of those goods were, on the 25th of April, 1865, in possession of said road at that place. He authorized plaintiff to take possession of the goods mentioned in direct interrogatory. (The interrogatory is not set forth.) The order was addressed to Col. George Younge, the Superintendent of said road. He had received from the plaintiff a consideration for said goods. The consideration was Osnaburgs for making grain-sacks, lamp-black and tanning-oil, for use in the Government shoe-factory. He thought plaintiff still had the order; he could not give a copy of it, but it was a simple order to the agent to deliver the goods to plaintiff.

The Ga. R. R. and Banking Co. *vs.* Scott.

The truth of the transaction was, he had gotten from plaintiff goods of different kinds and of considerable value, which he could not get elsewhere, and used these goods in different ways for the Confederate Government, and to satisfy plaintiff and repay him, an order on the railroad agent was given to him for a lot of goods which arrived at Augusta for Bridewell during the latter part of April, 1865. Plaintiff took the order in satisfaction of his demand against Bridewell as agent for said government.

*Cross-examined,* he said: He shipped the goods as Major L. O. Bridewell, a Quartermaster of the Confederate Government, stationed at Augusta, Georgia. He was a Quartermaster. When he spoke of the goods being in possession of the railroad agents on the 25th April, 1865, he spoke from knowledge of the fact.

He believed the order was signed by him officially, as he signed all orders with reference to Government goods shipped over said road. He had in his said official capacity frequent dealings of this sort with the officers of said company, and was known to them as an officer of said department, and was in that official character stationed at Augusta, Georgia. He did not remember to have ever shipped any goods of his own over said road.

These goods were the property of the Confederate States or they had been ; he sold and transferred them to plaintiff, and had full power and authority to do so. He thought the order was given about 20th April, 1865, but knowing these goods would arrive, he had assured plaintiff that he should be paid out of them on arrival, some weeks before. Their arrival was much delayed, and this was impressed upon him by plaintiff's frequent applications for payment. He had applied for and obtained from the Quartermaster-General an order to exchange and sell such goods as were on hand, for such as were needed about the works which he controlled. That order was left among his official papers in Augusta, Georgia, if not lost. This order was not given in view of a surrender of the Confederate States, but was a *bona fide* transaction. He had no interest in the suit.

*The order,* as follows:

"C. S. CLOTHING STORE DEPOT, Q. M. OFFICE,
*Augusta, Ga., April* 23, 1865.

COL. YOUNGE,
*Sup't of Georgia Railroad:*

You will please deliver to H. M. Scott thirty-five bales of yarns, etc., shipped to me from Madison, Ga., now in your depot.            Respectfully,        L. O. BRIDEWELL,
*Maj. and Q. M. in charge."*

Endorsed :

"Q. M. OFFICE,
*Augusta, Ga., April* 29, 1865.

Colonel Younge, Agent Georgia Railroad, will deliver to H. M. Scott what yarns and cloth are in your depot shipped to me.

L. O. BRIDEWELL,
*Major and Q. M."*

WM. WALKER testified : He was employed by said railroad in April, 1865; saw some yarns and hickory stripes which had been consigned to Maj. Bridewell at the depot, on 29th of said month, but on Saturday one of the car loads was taken away by the Government, the other was taken to Bellair for safety.    Discharged soldiers were passing through Augusta then and committing depredations, and it was thought best to have these goods out of the way.    This car was brought back after a few days, not over a week.    Major Bridewell was the Quartermaster representing the Confederate States in that department at Augusta, and these goods were consigned to him.    He did not remember the number of bales in the car, nor the amount of yarns or cloth.    The freight on these goods was not paid.    The Confederate Government had owed the railroad a large amount for freight for many months.    He knew the fact that the freight on these goods was not paid, because it was the custom not to collect freight till the car is unloaded and the contents checked and ready for delivery, and this car had not been unloaded.    He had for many years been employed by the company, and had an intimate knoyledge of their business.

He was present when the railroad was pillaged by a mob, in May, 1865 ; this car had not returned from Bellair then. He only knew the contents of the car by seeing them a week or ten days after they came back to Augusta ; it had then yarns and stripes, about half and half.

HENRY M. SCOTT, the plaintiff, testified : He delivered to Maj. Bridewell, for the use of the Confederate Government, goods to a considerable amount, for which that Government was indebted to him ; Bridewell was to pay him by giving him yarns and stripes. He had furnished Bridewell with tanners' oil, osnaburgs, etc. The negotiations between him and Bridewell, about settling by exchange, commenced as early as February, 1865. On the 23d of April, 1865, Bridewell gave him the order aforesaid, in pursuance of their contract ; it was given in good faith and had no reference to the surrender of the armies.

On Saturday, 29th April, 1865, the endorsement was made on the back of the order, and on that day he demanded of Mr. Younge, the agent of the defendant, the goods in his possession. Younge replied, " There is (a) trick in this arrangement with Maj. Bridewell. I do not think it is all right." Scott said, " It is all right, and you can see Major Bridewell, if you choose, and he will tell you the same thing." Younge refused to deliver the goods, saying " The authorities of the road have ordered me to hold the goods for freight." He said freight, generally, and not freight on these car loads. Scott replied he had plenty of money to pay the freight, that he had $100,000 or more, of Confederate money, and could pay the freight.

On Tuesday, May 2d, 1865, he went to the depot and saw the effects of the mob and the evidences of what they had done, saw one bale of goods marked L. O. Bridewell and took it with him, but afterwards sent it back to the witness, Walker, who claimed it as his own. He found one hundred and twenty-one bunches of yarn in the depot (two bales and a third), which were given up to him. He went to the depot several times, for the same purpose, after that, and demanded the goods so often, that Col. Younge got so he would

8

not look at his papers. Younge gave no other answer at any time inconsistent with that given on the 29th of April; his last visit to the depot was between 2d and 15th May; had spoken to Younge in the streets, previous to 29th April, on the subject, but made no demand till that day, when he took with him a shipping list and presented the order. The value of the goods was fifteen thousand dollars; the goods demanded were forty bales of yarns, twenty-one bales of stripes and five bales of woolen jeans. One car would have held the number of pounds they weighed, but not their bulk.

Mr. Myers testified: Each bunch of this yarn was worth $2.50 to $2.75 on 29th April, 1865; stripes were worth 30 cents, jeans 30 to 35 cents, in gold, at retail. The news of the surrender of Confederate States arms to United States army was received in Augusta about the 12th of April, 1865. Upon reflection, he would not fix the day. He remembered, feelingly, the pillaging of the depot by the mob, and knew the news of the surrender reached Augusta several days before that.

It was admitted that the premium on gold in currency was 38 per cent.

The foregoing brief was prepared by the attorneys for plaintiff. There was another prepared by Scott's attorney, and by consent, they both come up, under the Judge's sanction. They were not materially different.

After the argument the Court charged the Jury, that if they should believe, from the evidence, that Bridewell had no right to divest the title of the Confederate Government by sale to the plaintiff, or that said sale was fraudulent and not *bona fide*, there can be no recovery by the plaintiff. Also, if the jury believed, from the evidence, that Bridewell had a right to sell, and did *bona fide* transfer said property to plaintiff, then plaintiff is entitled to recover, provided the goods were not detained *bona fide*, and refused to be delivered on account of the non-payment of freight upon them, nor for the purpose of inquiring or ascertaining the character of the plaintiff's title. Also, that if the jury believed, from the evidence, that the refusal to deliver the goods to plaintiff was

based *bona fide* upon a claim of freight, and that the same was not tendered, and that the refusal to deliver was made for the purpose of *bona fide* inquiring into the plaintiff's title, and that the goods were destroyed by a mob or taken by Confederate or United States Government before defendant had a reasonable opportunity and time to satisfy himself upon the subject, then and in that event the company is not liable; otherwise, they *are*.    Also, that in such case, proof of demand, and refusal, was necessary, and that where demand and refusal are resorted to as evidence of conversion, possession by the plaintiff at the time of demand of the property sued for must be proven by the plaintiff. The Court charged, also, that if the refusal of Younge be received by the jury as evidence of the conversion of only so much of the goods as the defendant had in possession at the time of the demand, that the burden of showing how much in value, and what goods were thus in possession of the defendant at the time of the demand, was on the plaintiff, and he could not recover until he had shown this, "also, that if the freight on the goods had not been paid, the defendant had the right to refuse to deliver them."

His Honor, at the time of giving such charge, was requested to give the jury the following instruction, viz: "Whatever may be the rule of law applicable to other questions, it is incumbent on the plaintiff to identify the goods contained in the car described by the witness, Walker, as the only goods in possession of the road at the time of the demand on the 29th of April, 1865, as goods sued for and referred to in the petition.    They must be so distinctly identified as to enable the defendant to know what goods he must deliver in the event of a recovery against him, and to enable him to plead this recovery as a bar to any future suit by the same parties for the same cause of action;" which said request to charge was presented in writing, and was refused by the Judge.

After the said cause was thus submitted to the Jury, a verdict was returned for the plaintiff in the sum of forty-two hundred and fifty dollars in gold, with interest from April

23d, 1865, with discount on United States paper currency added at date of payment.

The defendant moved for a new trial upon the grounds, that the verdict was contrary to law, to the charge of the Court and the principles of justice and equity, and strongly and decidedly against the weight of the evidence; and because the court refused to charge as requested as aforesaid.

By consent, this motion was heard in chambers, before Judge REESE. A new trial was refused, and for review of the ruling on the points taken in the motion, the case was brought up.

JOHNSON & STARNES, attorneys for plaintiff in error, contended that they had shown paramount title out of the plaintiff, and cited 2 Greenleaf's Ev., Sec. 648; 14th Johns. R., 125; 15th Johns. R., 207; 11th Wendell, 466; Glenn vs. Garrison, 2 How. R., 1; Sheneshorn vs. Van Valkenburg, 11th Johns. R., 529.

2d. · Defendant's lien for freight was a good reply to the demand. 2 Gr. Ev., Sec. 648; 9th Bac. Abr., 678; Story on B., 588; West vs. Tupper, 1st Bailey, 193; Code of Ga., Secs. 3637, 3641.

This case is in the nature of detinue, Code, Sec. 5117, and the evidence and pleadings too uncertain. 1st Ves., 317; 3d Lev., 18; 2d South, 509—211; 3d Watts, 333; Thompson vs. Currier, 3d Foster N. H. R., 237; 2d Ld. Raymond R., 1410; 4th Burr, 2455.

HENRY W. HILLIARD, attorney for defendant in error, cited 20th Ga. R., 50; 26th, 438; 28th, 484; 30th, 661; 30th, 968; 31st, 351, 492 and 365, to show how loth this Court is to disturb verdicts.

Code, Secs. 2048, 2965; Adams vs. Clark, 9th Mass. R., 215; Heine vs. Andrews, 2d Durr R., 318; Dickey vs. The Franklin Bank, 32 Maine R., 572; Cobb & Dowes 9th Barb. R., 230, as to the refusal on claim of freight; 2d Sand. 47; 2d N. C. R., 266; 14th Eng. L. & E. R., 175, as to what was conversion in this case, and 9th East. R., 506; 2 Ld. Raymond, 792; 2d Burr R., 260; 18th Johns. R., 157; 3d Johns. Cases, 44, 414, to show that title was in Scott.

WALKER, J.

The refusal of the Court to give a pertinent legal charge when requested in writing, may be a ground for a new trial. Revised Code, section 3664. The Court should always give to the jury such a charge; but whether the refusal to give such a charge in any particular case should be a ground for a new trial, must depend on the facts and circumstances of the case, and the influence such omitted charge should have had upon the verdict of the jury. Suppose the verdict under the evidence is right and ought to have been the same if the charge requested had been given, a new trial should not on account of such refusal be granted. And such is this case. The verdict of the jury was right, or at least the defendant has no right to complain of it. We think the request to charge was pertinent and legal, and should have been given; but inasmuch as the verdict ought not to have been different from what it is if the charge had been given, and substantial justice has been done, a new trial should not be granted. Where a verdict metes out to the parties their respective rights, a Court should not be very astute in searching for grounds to set it aside. The great object of Courts should be to award to each suitor that to which under the law he is entitled; this accomplished, justice is satisfied. The result may not have been reached by the regularly beaten paths—the process may not very well stand the criticism of the rules of technical science; still, if the result is in accordance with the great principles of right, it should not be disturbed.

Judgment affirmed.